Argued and submitted November 24, 1980, reversed February 17, 1981

In the Matter of the Compensation
of Samuel Leffler, Claimant.

LEFFLER,
*Petitioner,*

*v.*

ALERT PLUMBING, INC.,
*Respondent.*

(WCB No. 79-3361, CA 18473)

623 P2d 1084

Thomas A. Huntsberger, Springfield, argued the cause for petitioner. With him on the brief was Ackerman & DeWenter, Springfield.

Margaret H. Leek Leiberman, Portland, argued the cause for respondent. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

This is an appeal by claimant from a denial by the Workers' Compensation Board of his claim for a neck injury. The employer's insurance carrier, EBI, denied the claim. Claimant then requested a hearing. Following the usual evidentiary hearing before the referee, he allowed the claim. The carrier then appealed to the Workers' Compensation Board, which reversed the referee. Claimant now appeals to this court. We reverse and reinstate the referee's order allowing the claim.

The crux of this dispute is how to assess the circumstances under which claimant's present neck condition developed.

Claimant is a 42-year-old plumber. At the time of the hearing claimant had worked for Alert Plumbing approximately ten years. Claimant works with his hands and arms overhead approximately 40 percent of the time. He works in tight quarters on occasion. He also works in cold and damp conditions. He first experienced some stiff neck problems on the job in 1965. Claimant again experienced neck symptoms in February, 1975, after setting plumbing fixtures. He missed a few days' work and was treated by Dr. Moffitt for "wry neck."

On January 25, 1978, claimant sustained a compensable injury to his neck and right elbow when he slipped on a board at a job site. He was treated by Dr. Moffitt, who diagnosed the injury as tendonitis in the right elbow and cervical spine strain. The claim was accepted as a nondisabling claim by SAIF, the employer's carrier at that time. Dr. Moffitt prescribed conservative treatment, consisting mostly of pain medication. Claimant took the medication on an as-needed basis on five days in February and two days in April. Claimant discontinued the medication in April, 1978, and had no further problems with his neck until October 30, 1978.

Claimant's evidence was that on October 30, 1978, he and his son were working underneath a house, fixing a broken pipe. Claimant was working in tight quarters, lying on his back and side with his arms extended above his head. The surface upon which he was lying was cold and damp,

and the air temperature was in the mid-thirties. Claimant worked under the house for approximately two hours. As claimant was working, he began to notice a stiffness and tightness in his neck. He asked his son to do the overhead work that day because of the soreness in his neck. His son observed that the claimant's movement was more limited than the previous day.

The next day, November 1, as he rose from bed, claimant experienced a "snapping" sensation in his lower neck. He felt severe pain in his neck and lost feeling in his right arm and shoulder. The severe pain and numbness was relieved by a second "snapping" incident which occurred 24 hours later, leaving claimant with a tight feeling in the muscles in the posterior neck.

Claimant was examined by Dr. Moffitt on November 2, 1978. Dr. Moffitt diagnosed the injury as a strain of the right supra spinitus, resulting from working with his arms over his head on October 30, 1978. He referred claimant to Dr. Stainsby, a neurosurgeon, at claimant's request. Dr. Stainsby examined claimant on November 10, 1978. Claimant's main complaints were neck pain, pain in both shoulders, and intermittent arm numbness. Dr. Stainsby ordered a myelogram, which revealed cervical spondylosis at C-5, C-6 and a small extra-dural defect at C-5, C-6 on the right. Claimant returned to work after the myelogram, having missed several days' work because of his neck injury.

Claimant filed a claim on November 10, 1978, for the injury occurring October 30, 1978. EBI, the employer's carrier as of the date of the injury, denied the claim on March 5, 1979, indicating that claimant's present condition predated their coverage.

Dr. Moffitt, in a letter to claimant's attorney on August 28, 1979, opined that claimant's work activities on October 30, 1978, were probably a material contributing factor to the condition of claimant's neck as it existed in November, 1978. Dr. Stainsby indicated that the improvement in claimant's condition between January, 1978, and October, 1978, was evidence that the claimant's neck symptoms which appeared after October 30, 1978, were not

caused by a continuation or worsening of his injury of January 25, 1978. Dr. Stainsby further stated that he did not know whether the extra-dural defect noticed on the myelogram was caused by the January, 1978, injury.

The referee concluded as follows:

"I conclude that the condition is compensable. Claimant was candid and straightforward in his testimony. The events of the October/November work situation were corroborated by claimant's son's testimony.

"The medical evidence (Dr. Moffitt) supports the conclusion that the October/November event was a material contributing cause of claimant's then symptoms. The fact that the doctor (claimant's treating doctor) also felt that the January incident was causative does not dilute the application of the 'last injurious exposure rule' as found in *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976). Claimant here was relatively stable until the fall 1978 incident.

"The fact that there was more than one onset of symptoms off the job (the 'snapping' incidents) does not defeat compensability. It is essentially a medical question on the ultimate conclusion here. Dr. Moffitt was persuasive. There was no evidence to indicate that the doctor had incomplete or erroneous information."

The Board, in reversing the referee, took the view that while the evidence establishes that claimant did suffer a neck injury in January, 1978, claimant did not suffer a second injury in October-November, 1978, and found no causal relationship between the November 1, 1978, incident and claimant's present complaints. The Board concluded that the November 1 incident occurred at claimant's home and that "the preponderance of the evidence does not establish a nexus between claimant's work and the November 1, 1978, incident which occurred at claimant's home."

We disagree. Based upon our study of the record, we conclude that claimant has proved by a preponderance of the evidence that he sustained a new disabling injury to his neck arising out of his employment on or about October 30, 1978. This is supported by the testimony of claimant and his co-worker and by the testimony both of claimant's treating physician, Dr. Moffitt, and the examining physician, Dr. Stainsby.

Reversed.